UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST KELLY HOLESTINE, CDCR #J-01366,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK COVELLO, et al.,<br><br>Defendants. | Case No.: 3:20-cv-0159-LAB-JLB<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2] AND**<br><br>**2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Ernest Kelly Holestine ("Plaintiff"), currently incarcerated at Salinas Valley State Prison ("SVSP") in Soledad, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, claiming various prison officials at Richard J. Donovan Correctional Facility ("RJDCF") violated his Eighth Amendment rights by failing to protect him from the assault of another inmate, labeling him an informant and conspiring against him. He further contends prison officials violated his First Amendment rights when they retaliated against him for attempting to report misconduct by prison staff. Finally, he alleges several violations of state tort law. (*See* Compl., ECF No. 1 at 20–21.)

1

Plaintiff seeks compensatory and punitive damages, as well as "such other relief it may appear Plaintiff is entitled to." (*Id.* at 22.)

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) when he filed his Complaint; instead, he has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.)

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report as well as a Prison Certificate completed by a trust account official at SVSP. *See* ECF No. 2 at 6–7; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. This statement shows Plaintiff has a current available balance of zero. Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2), declines to exact any initial filing fee because his prison certificates indicate he may have "no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Secretary of the California Department of Corrections and Rehabilitation, or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

B. Plaintiff's Allegations

In his Complaint, Plaintiff alleges that on February 12, 2019, Defendant M. Gonzalez, a fellow RJDCF inmate, physically assaulted him without provocation. (Compl., ECF No. 1 at 4 ¶ 24.) He alleges M. Gonzalez struck him with closed fist several times and when he fell to the ground, continued to "stomp and kick" him numerous times "in the head

4

and facial area." (*Id*. at ¶27.) Plaintiff was transported to the hospital, where he was admitted and treated for his injuries. (*Id*.) Plaintiff remained hospitalized for "several days" and underwent "emergency open reduction surgery on his right eye" to repair an "orbital fracture." (*Id.* at 4–5 ¶ 28.)

Plaintiff alleges that M. Gonzalez's battery of him was "incited, instigated and/or otherwise caused by the misconduct of [RJDCF correctional officers.]" (*Id*. at 5 ¶ 29.) He contends the attack was the "culmination of a series of retaliatory actions" by RJDCF correctional officers, including Defendants Taylor, Camacho, Herrera, Uhde, and Salas, "that had escalated over a period of months." (*Id*.)

Plaintiff states that, months before the assault, in July 2018, he had a conversation with another inmate about a potential civil lawsuit against correctional officers and Plaintiff asked the inmate if he would be willing to sign a declaration attesting to some of the purported misconduct. (*Id*. at 5 ¶ 30.) A third inmate overheard the conversation and reported it to Taylor and Camacho. (*Id*. at ¶ 31.) Taylor and Camacho confronted the inmate with whom Plaintiff had discussed the declaration and "threatened him with cell searches and other retaliatory action" if he cooperated with Plaintiff. (*Id.* at ¶¶ 32–33.) Taylor and Camacho also confronted Plaintiff, who assured them he was not going to file a civil suit. (*Id*.) Nonetheless, Plaintiff alleges, "from that point on, Taylor, Camacho and other RJDCF [correctional] offers began harassing, threatening and retaliating against Plaintiff" by refusing to issue him inmate appeal and request for interview forms, refusing to allow him to take showers, refusing to "submit work orders to maintenance staff" to have his cell's sink repaired, and refusing to "release him from his cell in a timely manner to attend the law library, mental health therapy groups and other scheduled appointments and activities." (*Id.* at 5–6 ¶ 33.) He also contends Defendants "refused to honor a reasonable accommodation that he had been granted by Defendant Covello and the RJDCF [Americans with Disabilities Act ("ADA")] Coordinator." (*Id*.)

/ / /

Plaintiff alleges that in August and September 2018, Taylor and Camacho learned

he had filed staff misconduct complaints, inmate appeals, and a civil suit in federal court, alleging violations of the ADA. (*Id*. at 6 ¶¶ 34–35.) On September 24, 2018, Plaintiff contends he was asked to participate in a survey conducted by CDCR administrative and mental health staff, including CDCR Lieutenants Cox and Robinson. During the survey, Plaintiff reported some of the staff misconduct and other abuses he had witnessed while confined in the RJDCF Enhanced Outpatient Program ("EOP"). (*Id.*) As a result, Lieutenants Cox and Robinson asked Plaintiff if he was "willing to be interviewed at a later date by CDCR's Internal Affairs Bureau" regarding his allegations, and Plaintiff agreed. (*Id*. at 7 ¶ 36.) On September 27, 2018, Plaintiff filed another inmate appeal, requesting a reasonable accommodation job change. He argued he needed the change because his Post Traumatic Stress Disorder ("PTSD") was being exacerbated by witnessing violence occurring at RJDCF Facility "C," where he worked. (*Id*. at ¶ 37.)

On November 2, 2018, Plaintiff was interviewed by the RJDCF ADA Coordinator in response to a reasonable accommodation appeal. During the interview, the ADA Coordinator explained that Plaintiff would be "re-stationed" to perform his work duties inside the EOP housing unit, allowing him to have "'minimal contact off the yard' where most of the violence was occurring." (*Id.* at ¶ 38.) Plaintiff contends this interview was witnessed by "numerous RJDCF Correctional Officers (including Dickerson, Sigala, Toledo and maybe Taylor), who were all milling around the picnic table on the Facility C exercise yard where the interview as conducted." (*Id*. at ¶ 39)

The next morning, correctional officers ordered Plaintiff to report to his work assignment. As Plaintiff neared the dining hall in Facility C, he saw Salas and Uhde, along with several other correctional officers. (*Id*. at 8 ¶ 40.) There were no other inmates or ADA workers present. Plaintiff entered the dining room to get his breakfast tray. He noticed the food on his tray was "raw and frozen." (*Id.* at ¶ 42–43.) He asked for a different tray and the kitchen workers told him, "You get that one." (*Id.*) Plaintiff asked for the supervisor and the inmate kitchen worker stated "Why? So you can write us up too?" (*Id.*) Plaintiff left the dining hall and spoke to Salas and Uhde about the raw food. Salas stated

"I can't force them to give you a different tray. You can either accept it or handle your business. Do whatever you got do. You wanna get down with them?" Plaintiff responded that he did not want to fight anyone. Salas told him "Then quit crying about it and just eat it." (*Id*. at ¶ 43.) Following the incident, Taylor, Camacho, Salas and Uhde, continued to refuse to honor the "reasonable accommodations" Plaintiff had been granted and required him to "perform his ADA worker duties at the outside exercise yard." (*Id*. at ¶ 44.)

On November 20, 2018, Plaintiff contends he had another incident with Taylor and Camacho. Plaintiff asked Taylor permission to assist an ADA inmate in reading and understanding his legal documents and Taylor refused. Plaintiff told Taylor that the ADA Coordinator had arranged for Plaintiff to be re-stationed and his "work duties included assisting ADA inmates" with their legal documents. (*Id.* at ¶ 44–45.) Taylor said that was not true and that if he caught Plaintiff in possession of any ADA inmate's legal documents, he would issue a Rules Violation Report. (*Id.* at 45.) Plaintiff asked Taylor to contact that ADA Coordinator to confirm that Plaintiff had been re-stationed to the EOP housing unit dayroom where he was assigned to perform tasks, including assisting ADA inmates with their legal documents. Taylor responded, "I don't need to confirm anything. I already know what's what." (*Id*. at 9 ¶ 46.) Plaintiff states that on December 6, 2018, he "had a face-to-face conversation with Defendant Covello, the RJDCF Acting Warden" and informed him of the situation and that RJDCF officers were refusing to honor his accommodation. (*Id.* ¶ 48.) Covello indicated that he would send the ADA Coordinator to the housing unit to "fix the problem." (*Id*.)

Meanwhile, on December 5, 2018, Plaintiff was summoned to RJDCF Investigative Services Unit ("ISU") offices where he was interviewed by two officers from CDCRs Office of Correctional Safety ("OCS") in Sacramento. They explained they were investigating allegations of staff misconduct at RJDCF Facility C and asked if Plaintiff was willing to cooperate. (*Id.* at ¶ 49.) Plaintiff told them he was and provided "detailed eye witness accounts of excessive use of force, officers failing to intervene and/or report inmate-on-inmate violence, and other instances of staff and inmate misconduct." (*Id.* at ¶

7

50.) After, the investigators informed Plaintiff they might seek to interview him again. (*Id*.)

On February 11, 2019, Plaintiff's name was called over the public address system and he was instructed to report to the plaza gate for an "attorney visit." (*Id*. at ¶ 51.) As Plaintiff crossed the yard, Herrera followed directly behind him and watched as Investigative Services Unit ("ISU") officers met Plaintiff and escorted him to the ISU offices where Plaintiff was again interviewed by two OSC officers. After the interview, the OCS officers told Plaintiff they were going to "return to Sacramento and recommend a full Internal Affairs investigation" be initiated. (*Id*. at 10 ¶ 52–53.)

Plaintiff contends that while he was being interviewed, Herrera contacted Taylor and informed him Plaintiff was meeting OCS officers. (*Id.* at ¶ 54.) Upon returning to the housing unit after the interview, Plaintiff was "confronted by Taylor and five or six other correctional officers." Taylor said "in a loud sarcastic voice: 'Hey Holestine, How did your attorney visit go?'" (*Id.* at ¶ ¶ 55–56.) When he said "attorney visit," Taylor made "imaginary quotation marks in the air with his fingers on both hands." Plaintiff alleges Taylor then loudly stated: "We already know you weren't seeing your attorney. We know you were out here in [the ISU offices] talking to internal affairs." (*Id.*) Taylor continued to berate Plaintiff saying such things as: "Did they give you a wire to wear? Are you mic'ed up right now? Should we be careful what we say around you now? Did they promise to take time off your sentence for testifying against us?" Plaintiff did not respond. (*Id*. at ¶ 56.) The confrontation with Taylor was witnessed by several inmates who overheard Taylor "labeling Plaintiff as an informant," including M. Gonzalez. (*Id.* at 11 ¶ 57.)

The next day, on February 12, 2019, Plaintiff was passing the officer's podium in the dayroom when he overheard Taylor say to Camacho, "He was out there talking to ISU yesterday." (*Id.* at ¶ 58.) When Plaintiff returned to the housing unit after dinner, he was again confronted by Taylor and Camacho. Taylor demanded Plaintiff tell him what the OCS officers had asked him about and what Plaintiff had told them. Plaintiff was "concerned for his safety" and told Taylor that the OCS was investigating staff misconduct on Facility C. Plaintiff lied, however, and told Taylor he had not provided any information

against the officers. (*Id*. at ¶ 59.) Taylor then asked Plaintiff if he planned to come out of his cell later that evening for dayroom activities and Plaintiff replied that he was. The exchange between Taylor and Plaintiff was overheard by several inmates. (*Id.* at ¶¶ 60–61.)

That evening, a few minutes before the scheduled dayroom release, Taylor and Camacho had M. Gonzalez released from his cell. M. Gonzalez went to the officer's podium in the dayroom and had a conversation with Taylor and Camacho. Camacho handed M. Gonzalez a pair of black gloves. M. Gonzalez "put on the gloves and began pacing back and forth in the dayroom, while swinging his arms and shadowboxing." (*Id.* at ¶ 62.) A few minutes later, Plaintiff and the other inmates were released from their cells for evening dayroom activities. Plaintiff went to the dayroom area, sat down at a table "and was immediately attacked from behind by Defendant M. Gonzalez." (*Id.* at 12 ¶ 63.)

Based on these facts, Plaintiff alleges Defendants Taylor, Camacho, Herrera, Uhde, Salas and M. Gonzalez conspired and retaliated against him in violation of the First and Eighth Amendments. Plaintiff further claims Defendants Covello, Paramo, Armenta, Covel, Bracamonte, Smith and A. Gonzalez acted negligently in failing to properly train and supervise their subordinates in violation of California law. (*See id.* at 2 ¶ 6) (citing 28 U.S.C. § 1367 (stating federal supplemental jurisdiction exists "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution")).

As currently pleaded, the Court finds that Plaintiff's Complaint contains "sufficient factual matter, accepted as true," to state First and Eighth Amendment claims for relief that are "plausible on [their] face," *Iqbal*, 556 U.S. at 678, and, therefore, sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *see also Iqbal*, 556 U.S. at 678; *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("To prove a violation of the Eighth Amendment a plaintiff must 'objectively show that he was deprived of something "sufficiently serious," and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety.'") (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (stating the Eighth Amendment "requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'"); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene."); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989) (labeling prisoner a "snitch" in the presence of other inmates is sufficient to state a claim of deliberate indifference to an inmate's safety); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (concluding a conspiracy claim under § 1983 requires factual allegations supporting "an agreement or 'meeting of the minds' to violate constitutional rights") (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989)).

Therefore, the Court will direct the U.S. Marshal to effect service of summons and Plaintiff's Complaint on his behalf.[2] *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

///

---

[2] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

**III.   Conclusion and Order**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $ 10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) and to forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each named Defendant. In addition, the Clerk will provide Plaintiff with certified copies of this Order, his Complaint, and the summons so that he may serve these Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where each named Defendant may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1c., and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

5. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the Defendants as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6. **ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil

Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

7. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: April 6, 2020

Hon. Larry Alan Burns
Chief United States District Judge