UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST KELLY HOLESTINE<br>CDCR #J-01366,<br><br>        Plaintiff,<br><br>vs.<br><br>P. COVELLO; D. PARAMO;<br>F. ARMENTA; C. COVEL;<br>P. BRACAMONTE; LT. SMITH;<br>A. GONZALEZ; R. HERRERA;<br>C. TAYLOR; F. CAMACHO;<br>N. UHDE; C/O SALAS; M. GONZALEZ,<br><br>        Defendants. | Case No.: 3:20-cv-0159-LAB-JLB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 34]** |

  Ernest Kelly Holestine, ("Plaintiff"), currently incarcerated at Salinas Valley State Prison ("SVSP") located in Soledad, California is proceeding pro se and in forma pauperis ("IFP") in this civil rights action pursuant to 42 U.S.C. Section 1983. On December 21, 2020, Plaintiff filed his First Amended Complaint ("FAC"). (*See* ECF No. 35, FAC.) Plaintiff alleges that Defendants, officials from the Richard J. Donovan Correctional Facility ("RJD"), violated his constitutional rights and he also brings state law claims against these same Defendants. (*See generally* FAC.)

Currently before the Court is Defendants Herrera, Covello, Paramo, Armenta, Covel, Bracamonte, Smith, and A. Gonzalez's[1] motion to dismiss Plaintiff's First Amended Complaint. (*See* ECF No. 34.) Defendants contend that Plaintiff fails to state a claim upon which relief may be granted and the Court should decline to exercise supplemental jurisdiction over the state law claims. (*See generally id.*) Plaintiff has filed an opposition and Defendants have filed a reply. (*See* ECF Nos. 41, 44.) Having carefully considered Plaintiff's First Amended Complaint and the parties' briefs, the Court **GRANTS** Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

## I. Background

### A. Plaintiff's Allegations

On February 12, 2019, Plaintiff was "released from his assigned cell" at RJD for "evening dayroom activities." (FAC, ECF No. at 4.) Shortly after he arrived at the dayroom, he was "battered by Defendant M. Gonzalez," a fellow inmate. (*Id.*) He alleges Gonzalez approached him from behind and "without provocation battered [him] with his fists and feet." (*Id.*) Gonzalez purportedly struck Plaintiff "on the right ear" causing Plaintiff to "suffer a three (3) centimeter laceration inside his right ear canal." (*Id.*) He also allegedly struck Plaintiff in the back of his head with a "closed fist" causing Plaintiff to strike his forehead on the concrete floor. (*Id.*) As a result, he suffered a "serious concussion." (*Id.*) Gonzalez allegedly began to "stomp and kick Plaintiff in the head and facial area multiple times." (*Id.*) Plaintiff was "transported by ambulance to Scripps Mercy Hospital" where he was admitted for "several days and underwent emergency open reduction surgery on his right eye." (*Id.*)

///
///

---

[1] Defendants Taylor, Camacho, Unde, and Salas are not seeking dismissal of the claims against them and thus, the claims against them remain in this action. However, for reasons set forth in this Order, the Court will dismiss Defendant Gonzalez, an inmate at RJD, from this action.

Plaintiff alleges that Gonzalez took these actions because he was "incited, instigated" by the "misconduct of Defendants Taylor, Camacho, and Herrera." (*Id.* at 5.) In July of 2018, Plaintiff was having a conversation with another inmate "regarding the rampant violence and staff misconduct" at RJD. (*Id.*) Plaintiff also discussed a "potential civil suit and asked if this other inmate would be willing to sign a declaration attesting to some of these incidents." (*Id.*) This inmate "agreed to cooperate." (*Id.*) Plaintiff alleges a third inmate overheard this conversation and "reported it to Defendants Taylor and Camacho." (*Id.*) When Taylor and Camacho confronted Plaintiff about what they were told, Plaintiff "assured Defendants he was not, in fact, proceeding with any such civil suit." (*Id.*) However, Defendants Taylor, Camacho, and "other [RJD] officers began harassing, threatening, and retaliating against Plaintiff." (*Id.*)

On December 6, 2018, Plaintiff had a "face-to-face conversation with Defendant Covello," the RJD Warden. (*Id.* at 8.) Plaintiff "apprised him of his work assignment issues" and informed him that RJD officers were "refusing to honor" his ADA "reasonable accommodation." (*Id.* at 9.) Covello purportedly indicated he would "send the ADA coordinator" to Plaintiff's building to "fix the problem." (*Id.*)

On day prior, on December 5, 2018, Plaintiff, along with other inmates, was "summoned" to the RJD Investigative Services Unit ("ISU") offices and was interviewed by "two officers who identified themselves as being with the CDCR's Office of Correctional Safety" located in Sacramento, California. (*Id.*) They informed Plaintiff that they were "conducting an investigation into allegations of staff misconduct" at RJD and asked if Plaintiff was "willing to cooperate and Plaintiff agreed." (*Id.*) Plaintiff alleges he "provided detailed eyewitness accounts of excessive use of force, officers failing to intervene and/or failing to report inmate-on-inmate violence, and other instances of staff and inmate misconduct." (*Id.*) Plaintiff claims these officers took written notes and "indicat[ed] that he may be interviewed again at a later date." (*Id.*)

///
///

On February 11, 2019, Plaintiff was "instructed to report across the exercise yard to the Plaza Gate for an 'attorney visit.'" (*Id.*) Plaintiff claims he observed Herrera following him across the yard to the Plaza Gate. (*See id.*) Herrera "stood and watched an ISU officer escort Plaintiff "through the Plaza Gate" to the ISU offices. (*Id.*) Plaintiff was again interviewed by two officers from the "CDCR's Office of Correctional Safety." (*Id.* at 10.) Plaintiff was asked to repeat his allegations from the December 5, 2018 meeting and he "complied." (*Id.*) These officers purportedly told Plaintiff that "based on what Plaintiff provided, they were going to recommend a full internal affairs investigation." (*Id.*) Herrera, in the meantime, "returned to the Facility 'C' gymnasium and contacted Defendant Taylor" to inform him that Plaintiff "had been escorted to the ISU offices for an interview." (*Id.*) When Plaintiff returned to his housing unit, he claims that Taylor said to him that he knew Plaintiff has been "talking to internal affairs" at the ISU offices." (*Id.*) Plaintiff further alleges that Taylor made comments "labelling Plaintiff as an informant" in front of other inmates." (*Id.*)

Plaintiff claims that RJD "corrupt officers' retaliatory actions were being routinely facilitated by their supervisors (Sergeants, Lieutenants, Captains, and Wardens)." (*Id.* at 15.) Plaintiff further claims that these "supervisors were routinely being notified by the aggrieved inmates and other witnesses that the corrupt officers had used excessive force without provocation, had illegally confiscated or destroyed their personal property, had labelled them as informants or revealed their sensitive case factors to the other inmates to get them assaulted." (*Id.*)

Plaintiff further alleges that Defendants Covello, Paramo, Armenta, Covel, and Bracamonte were "routinely attending and/or conducting administrative segregation ("ad-seg") review hearings, Institutional Classification Committee ("ICC") review hearings, Unit Classification Committee ("UCC") review hearings, and disciplinary report hearings as part of their assigned duties. (*Id.* at 25.)

///
///

As a result of allegedly attending these hearings, Plaintiff claims these Defendants "were continuously being apprised of the incidents and circumstances resulting in inmates' ad-seg placement, issues of rules violation reports ("RVR"), or other reasons necessitating these hearings." (*Id.*)

Plaintiff seeks unspecified compensatory and punitive damages. (*Id.* at 36.)

### B. Procedural History

Plaintiff filed his initial Complaint and motion to proceed IFP in this case on January 23, 2020. (*See* ECF No. 1, 2.) The Court granted Plaintiff's motion to proceed IFP and found that Plaintiff's Complaint contained "sufficient factual matter, accepted as true," to state First and Eighth Amendment claims for relief that are "plausible on [their] face," to survive the 'low threshold' for proceeding past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). (ECF No. 4 at 9.) Accordingly, the Court directed the U.S. Marshal's service to effect service on Plaintiff's behalf. (*See id.* at 10-11.)

On June 26, 2020, Defendants Covello, Paramo, Armenta, Covel, Bracamonte, Smith, and A. Gonzalez (the "Supervisory Defendants") filed a Motion to Dismiss Plaintiff's fifth cause of action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 19.)

Instead of filing an Opposition, Plaintiff filed a request to file amended complaint. (*See* ECF No. 24.) This request was granted, and Plaintiff filed his FAC on December 21, 2020. (*See* ECF No. 35.) The Supervisory Defendants and Herrera filed their Motion to Dismiss claims against them in Plaintiff's FAC on January 4, 2021. (*See* ECF No. 34.)

## II. Request for Judicial Notice and Evidentiary Objections

### A. Plaintiff's Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of Plaintiff's "Exhibits 1 through 25" submitted in support of his Opposition to Defendants' Motion. (*See* ECF No. 41 at 51.) Plaintiff's Exhibits 1 through 25 are pleadings filed by various plaintiffs who were or are housed at RJD alleging that their constitutional rights were violated while housed there, along with Orders and Reports and Recommendations issued by various United States

District Judges and Magistrate Judges. (*See id.* at 76 – 221.) He also submits a "Special Master's Draft Report re Status of State of California Corrective Action Plans for Administrative Investigations and Discipline," along with various sections of Title 15 of the California Code of Regulations. (*See id.* at 222 – 322.) Defendants have filed evidentiary objections to all of Plaintiff's Exhibits. (*See* ECF No. 44-1 at 1-6.) In addition, Plaintiff has filed a "Reply to Defendants' Objection to Evidence." (*See* ECF No. 46.)

The Court **DENIES** Plaintiff's request for judicial notice. Federal Rule of Evidence 201 provides an avenue for the Court to take judicial notice of reasonably indisputable adjudicative facts. *See* Fed. R. Evid. 201. In this case, while judicial notice of the existence of these court filings may be proper, if Plaintiff is seeking to conclusively establish their factual findings or legal conclusions, judicial notice is not appropriate. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) ("Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice."); *Jernigan v. Cal. Dep't of Corr. & Rehab.*, No. C 09-5192 RS, 2011 U.S. Dist. LEXIS 9675, at *3 n.3 (N.D. Cal. Jan. 24, 2011) ("While judicial notice of the existence of documents filed in a court proceeding may be proper, it does not permit any assertions of fact or legal conclusions within those documents to be treated as conclusively established[.]").

In the alternative, if Plaintiff is citing these materials to support his arguments, judicial notice is unnecessary; the Court will consider the reasoning contained in these materials for whatever persuasive value they may have. *See Banneck v. HSBC Bank USA, N.A.*, No. 15-cv-02250-HSG, 2016 U.S. Dist. LEXIS 79980, at *6 (N.D. Cal. June 20, 2016) (judicial notice of orders in other cases unnecessary); *see also DeJesus Rodriguez v. Unknown-Named Disciplinary Hearings Agent*, No. 2:09-cv-02195 FCD KJN PS, 2010 U.S. Dist. LEXIS 79460, at *7 (E.D. Cal. Aug. 5, 2010) (unnecessary for plaintiff to file a separate request for judicial notice of a statute in support of his position—"[r]eference to any statutes, law or other authority should be included in the motion and/or memorandum of points and authorities that seek affirmative relief.").

### III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Bryan v. City of Carlsbad*, 207 F. Supp. 3d 1107, 1114 (S.D. Cal. Mar. 20, 2018).

Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), including the exhibits attached to it. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.) However, exhibits that contradict the claims in a complaint may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims.") (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))); *see also Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (courts "may consider facts contained in documents attached to the complaint" to determining whether the complaint states a claim for relief).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Therefore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**IV. Discussion**

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

**A. First Amendment Retaliation claim**

Defendant Herrera seeks dismissal of the First Amendment retaliation claim against

him found in the first cause of action in Plaintiff's FAC.  (*See* Defs.' Memo of P&As in Supp. of Mtn. to Dismiss [hereinafter "Defs.' P&As"], ECF No. 34 at 13-14.)

"Prisoners have a First Amendment right to file grievances against prison officials," *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012), and prison officials "may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct." *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)).

Because courts must also defer to the "reasonable decisions of prison officials," *id.* (citing *Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)), "[w]hen a prisoner claims retaliation, [courts] strike a balance by requiring him to show that (1) 'a state actor took some adverse action … (2) because of (3) [the] prisoner's protected conduct, … that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" *Id.* (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted)); *accord Watison*, 668 F.3d at 1114-15; *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Brodheim*, 584 F.3d at 1269.

In their Motion, Defendants argue that "Plaintiff does not correctly assert a cause of action for retaliation against Defendant Herrera" because Plaintiff has not alleged that Herrera took any "adverse action" against him.  (Defs.' P&As at 13; *Shepard*, 849 F.3d at 686.)

In response, Plaintiff argues that Defendants misunderstand the "gist of Plaintiff's legal claims against Defendant Herrera."  (Pl.'s Opp'n to Defs. Mtn. to Dismiss [hereinafter "Pl.'s Opp'n"], ECF No. 41 at 23.)  Plaintiff maintains that he "does not simply accuse Defendant Herrera of retaliation, but rather he accuses him of <u>conspiracy</u> to retaliate.")  (*Id.*) (emphasis in original).

In his FAC, Plaintiff alleges that Herrera observed him when he was summoned to speak with CDCR officials in the RJD Investigative Services Unit ("ISU") offices.  (*See* FAC at 9.)  He further claims that after Herrera made this observation, Herrera "returned

to the Facility 'C' gymnasium and contacted Defendant Taylor" to inform him that Plaintiff "had been escorted to the ISU offices for an interview." (*Id.*)  When Plaintiff returned to his housing unit, he claims that Taylor said to him that he knew Plaintiff has been "talking to internal affairs" at the ISU offices." (*Id.*)  Plaintiff further alleges that Taylor made comments "labelling Plaintiff as an informant" in front of other inmates." (*Id.*)

In his Opposition, Plaintiff argues that Herrera allegedly "reveal[ed] Plaintiff's status as a confidential informant to Defendant Taylor which later led to Plaintiff being assaulted by Defendant M. Gonzalez" which is a "sufficiently [alleged] 'adverse action' taken by Defendant Herrera." (Pl.'s Opp'n at 27.)  The Ninth Circuit has held that a First Amendment retaliation claim can be made when a prisoner alleges that prison officials called him a "snitch" in front of other inmates and these inmates threatened the plaintiff with harm as a result of being called a snitch. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989).  However, Plaintiff's FAC does not allege that Herrera called him an informant in front of inmates, instead he claims that Herrera told Taylor, who proceeded to call him an informant in front of other inmates, and he was assaulted as a result. (*See* FAC at 9.)  The allegation that one correctional officer purportedly told another correctional officer that Plaintiff met with CDCR investigative officials does not constitute an "adverse action" against Plaintiff, absent allegations establishing that Herrera and Taylor reached some agreement that Taylor would retaliate. Plaintiff's FAC is devoid of any allegation that Herrera knew that Taylor would allegedly take any adverse action against him, nor does Plaintiff allege that Herrera personally took any specific action against him. Thus, the Court GRANTS Defendant Herrera's Motion to Dismiss the First Amendment retaliation claim against him pursuant to Federal Rules of Civil Procedure 12(b)(6).

### B.     Fifth Cause of Action – Eighth Amendment claim

The Supervisory Defendants seek dismissal of Plaintiff's Eighth Amendment failure to protect claim found in the fifth cause of action in Plaintiff's FAC. (Defs.' P&As at 14-18.)  Specifically, in this cause of action, Plaintiff alleges that these Defendants "failed to

protect him from the substantial and pervasive pattern of violence" and they "deliberately failed to lawfully administer, train, supervise, and discipline employees, leading to Plaintiff being battered by another inmate in violation of the Eighth Amendment to the United States Constitution." (FAC at 34.)

Defendants argue that they cannot be held liable for the attack on Plaintiff in their supervisory capacity because Plaintiff "cannot plead that any of them had an involvement or even knowledge of the purported planned assault." (Defs. P&As at 14.) In response, Plaintiff argues that the "staff and inmate violence and abuse was . . . being facilitated by a number of deficient customs, policies, and practices that theS Defendants were aware of for years and deliberately failed to correct." (Pl.'s Opp'n at 30.) He further argues that "[t]hese customs and policies included failing to properly investigate staff misconduct complaints, and failing to properly supervise, segregate, discipline and discharge repeat offenders." (*Id.*)

Plaintiff claims that he was a "vulnerable inmate with serious safety concerns." (*Id.* at 29.) He was housed in a special needs yard ("SNY") which housed a "high concentration of medical and mentally disabled inmates who were all at a greater risk of being abused by other violent and predatory inmates." (*Id.*) He claims these supervisory Defendants knew there was a policy to "screen out and exclude" inmates who were "violent and predatory" from being housed in the "special mental health unit" but they also purportedly knew that these policies were "not being adhered to" causing violent inmates to be housed on the SNY. (*Id.* at 29-30.) As a result of these alleged failures to adhere to policy, "one of these violent and predatory inmates [assaulted] Plaintiff inside the special mental health unit." (*Id.* at 30.)

"'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation is 'objectively, sufficiently serious' and

(2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). The second prong of this test is subjective, and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837. "'Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hearns*, 413 F.3d at 1040 (quoting *Farmer*, 511 U.S. at 835) (internal alterations omitted)). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

As Defendants rightly point out, they cannot be held liable simply by virtue of their supervisory roles within the CDCR. This is because there is no *respondeat superior* liability under Section 1983. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." (emphasis in original)). As a result, in order to state a claim against these Defendants, Plaintiff must allege their "'personal involvement in the constitutional deprivation'" or "'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), *abrogated on other grounds by Farmer*, 511 U.S. at 837).

Defendant Armenta is alleged to be a "Chief Deputy Warden" and Defendant Covel is alleged to be the "Associate Warden for the [RJD] Facility "C" Enhanced Outpatient Program ("EOP")." (FAC at 16.) Defendants Bracamonte, Smith, and A. Gonzalez are alleged to be the RJD "Facility "C" Captain, Lieutenant, and Sergeant" who "held supervisory authority of all Facility "C" correctional officers and inmates." (*Id.*)

Plaintiff's Eighth Amendment claim against these Defendants arises solely from

their purported supervisory roles and his FAC is devoid of any specific factual allegations that they had any direct knowledge of the alleged risk to his personal safety. According to Plaintiff, their connection to the alleged assault against Plaintiff by another inmate is established with their alleged failure to "administer, train, supervise, and discipline their subordinate employees." (FAC at 34.) However, Plaintiff does not identify how any of the Defendants had any specific reason to believe that Inmate Gonzalez posed a danger to Plaintiff. As a result, Plaintiff has not alleged that these Defendants "kn[ew] of and disregard[ed] an excessive risk to [Plaintiff's] health or safety," or that these Defendants were both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference." *See Farmer*, 511 U.S. at 837.

For the reasons set forth above, Plaintiff's First Amended Complaint does not state an Eighth Amendment claim against Defendants A. Gonzalez, Smith, Covel, Armenta, or Bracamonte. Thus, the Court **GRANTS** those Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim in his fifth cause of action pursuant to Federal Rules of Civil Procedure 12(b)(6).

Defendants Paramo and Covello, the past and present wardens of RJD, are also alleged to be liable for the Inmate Gonzalez's alleged attack on Plaintiff based on their purported failure to "administer, train, supervise, and discipline their subordinate employees." (FAC at 34.) Unlike the other Supervisory Defendants, however, Plaintiff includes factual allegations as to Defendants Paramo and Covello in the body of his FAC. Plaintiff alleges that on August 30, 2018, Paramo and Covello issued a second level response to a grievance he filed "alleging a "civil conspiracy by the [RJD] appeals staff and the Facility C officers to 'harass, intimidate, retaliate, interfere, and otherwise thwart' his efforts to utilize the inmate appeals process." (FAC at 17-18.) A review of the underlying grievance filed by Plaintiff, which he has attached to his FAC, demonstrates that there are allegations of his frustration with the grievance system but there are no allegations that there were any concerns regarding a serious risk to his safety by other inmates. (*See id.* at 59-60, Inmate/Parolee Appeal CDCR 602, Log No. RJD-C-18-5278

dated August 19, 2018.) None of the correctional officers identified by Plaintiff in this grievance are Defendants in this matter. (*See id.*) The fact that Paramo and Covello responded to this grievance, a grievance that includes no specific concern for his safety, does not demonstrate deliberate indifference on the part of either individual.

Plaintiff alleges that on December 6, 2018, Plaintiff had a "face-to-face conversation with Defendant Covello." (FAC at 8.) Plaintiff "apprised him of his work assignment issues" and informed him that RJD officers were "refusing to honor" his ADA "reasonable accommodation." (*Id.* at 9.) Covello purportedly indicated he would "send the ADA coordinator" to Plaintiff's building to "fix the problem." (*Id.*) Again, there is no allegation that this purported interaction raised any concern by Plaintiff with regard to his safety or that Covello was aware of a serious risk to Plaintiff's safety.

But as the Supervisory Defendants point out, the FAC does not allege any facts suggesting that Defendants Paramo or Covello were aware that Plaintiff was at risk of injury by another inmate. Accordingly, Plaintiff's allegations, taken as true, fail to state an Eighth Amendment claim against Defendants Paramo or Covello, too. Thus, the Court **GRANTS** those Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim in his fifth cause of action pursuant to Federal Rules of Civil Procedure 12(b)(6).

### C.     Eighth Cause of Action

The Supervisory Defendants also seek dismissal of Plaintiff's state law claim of "negligent protection from other prisoners." (*See* Defs. P&As at 18-21; FAC at 35.) Plaintiff alleges that these Defendants "had a mandatory duty, imposed by the 'special relationship' doctrine between jailers and prisoners." (FAC at 35.)

California Government Code Section 820.8 provides ""[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person." Cal. Gov.'t Code § 820.8. California Courts have held that § 820.8 immunizes a supervisor from vicarious liability. *See Weaver by and through Weaver v. State of California*, 63 Cal.App. 188, 203, 73 Cal.Rptr.2d 571 (1998) (holding Commissioner of California Highway Patrol could not be held vicariously liable for actions

of subordinate CHP officers under § 820.8); *see also Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975) ("Supervisory personnel whose personal involvement is not alleged may not be held responsible for the acts of their subordinates under California law."). Plaintiff offers no factual allegations that any of these Defendants played any direct role in the alleged assault or had any personal knowledge that an assault would occur.

Accordingly, the Court **GRANTS** Defendants Covello, Paramo, Armenta, Covel, Bracamonte, Smith, and A. Gonzalez's Motion to Dismiss Plaintiff's eighth cause of action on the grounds that they are immune.

### D. Ninth Cause of Action

The Supervisory Defendants seek dismissal of Plaintiff's state law claim of "negligent administration, supervision, and discipline." (Defs.' P&As at 20-22; FAC at 35.) Plaintiff alleges that these Defendants had a duty to "enforce all laws, regulations and procedures that governed the actions and activities of [RJD] inmates and staff, to ensure that all staff and inmates were adequately trained, supervised, and disciplined, and to ensure that Plaintiff was treated humanely and that his physical and mental well-being were not unnecessarily and unreasonably jeopardized." (FAC at 35.)

Defendants argue that they are immune because California Government Code Section 820.2 provides that a "public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov.'t Code § 820.2. (Defs.' P&As at 20.)

"Whether a public employee is entitled to immunity for discretionary acts hinges on whether the acts or omissions in dispute constitute 'basic policy decisions' and 'ministerial decisions." *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F.Supp.2d 1107, 1122 (E.D. Cal. 2011) (quoting *Caldwell v. Montoya*, 10 Cal.4th 972, 981 (1995)). Defendants argue that they are immune under § 820.2 because "their implementation of training, supervision, and policies constituted basic policy decisions" and thus are not "ministerial." (Defs.' P&As at 21.) The Court agrees. Plaintiff doesn't allege any connection between these Defendants

and the specific actions giving rise to this matter more direct than the Supervisory Defendants' role as the alleged tortfeasors' supervisors. While Plaintiff refers to these Defendants' duties as "ministerial," those duties, such as establishing training and disciplinary policies, "are the types of basic policy decisions that the legislature granted immunity for under § 820.2." *Estate of Abdollahi v. County of Sacramento*, 405 F.Supp.2d 1194, 1214 (E.D. Cal. 2005).

Accordingly, the Court **GRANTS** the Supervisory Defendants' Motion to Dismiss Plaintiff's ninth cause of action on the grounds that they are immune.

## V. Conclusion and Orders

Accordingly, the Court:

(1) **GRANTS** Defendant Herrera's Motion to Dismiss Plaintiff's First Amendment retaliation claims against him; and

(2) **GRANTS** Defendants Covello, Paramo, Armenta, Covel, Bracamonte, Smith, and A. Gonzalez's Motion to Dismiss Plaintiff's Fifth, Eighth and Ninth cause of action claims against them.

**IT IS SO ORDERED**.

Dated: June 7, 2021

Hon. Larry Alan Burns
United States District Judge